**HACH ROSE SCHIRRIPA & CHEVERIE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
212.213.8311
212.779.0028 (fax)
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| The Estate Of Gregory Kubiak and Joseph Kubiak, As Administrator Ad Prosequendum of The Estate of Gregory Kubiak<br><br>**Plaintiffs,**<br><br>**v.**<br><br>CFG Health Systems, LLC, Cumberland County, Warden Richard T. Smith, in his individual and official capacity, Corrections Officer Richard Cotto, in his individual and official capacity, Gabriella Frisbey, in her individual and official capacity,<br><br>**Defendants.** | **Civil Action No.**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, The Estate of Gregory Kubiak and Joseph Kubiak, as Administrator Ad Prosequendum of the Estate of Gregory Kubiak, (collectively, "Plaintiffs"), by and through their attorneys, Hach Rose Schirripa & Cheverie LLP, bring this action for damages and other legal and equitable relief against CFG Health Systems, LLC, Cumberland County, Warden Richard T. Smith, in his individual and official capacity, Corrections Officer Richard Cotto, in his individual and official capacity, and Gabriella Frisbey, in her individual and official capacity (collectively, "Defendants") and allege as follows:

**INTRODUCTION**

1.      Decedent Gregory Kubiak was no stranger to incarceration. Unfortunately, he was incarcerated at the Cumberland County Jail multiple times.  During a 2017 incarceration, at the Cumberland County Jail, CFG employees treated Kubiak for his depression and anxiety with medication.

2.      During Decedent's November 2018 incarceration, he began experiencing a serious medical need requiring the attention of medical personnel.

3.      In fact, in November 2018, two days after being incarcerated in Cumberland County Jail, Kubiak hung himself in his cell and died three days later.  Employees of Cumberland County failed to properly monitor Kubiak and other inmates; those employees even went so far as to conceal their negligent actions with false log-book entries and obscuring video cameras with trash-bags to obscure the monitoring of their actions.  Defendants failed to provide the necessary medical treatment to Decedent, resulting in his death and thereby violating constitutional protections afforded to the Decedent.

4.      Plaintiffs brings suit pursuant to 42 U.S.C. § 1983 and for negligence seeks compensatory, punitive damages, and costs.

## JURISDICTION AND VENUE

5.      Plaintiffs' case arises under the Constitution and laws of the United States, specifically, the Eighth and Fourteenth Amendments to the United States Constitution and is authorized by 42 U.S.C. § 1983 (allowing suit to correct constitutional violations) and 42 U.S.C. § 1988 (providing for attorney fees and litigation expense awards).  This Court has jurisdiction over Plaintiffs' federal constitutional claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

6.     Venue is proper under 28 U.S.C. § 1391 because all incidents, events, and occurrences giving rise to this action occurred in the County of Cumberland, State of New Jersey.

## PARTIES

7.     The Cumberland County Surrogate's Court duly appointed Plaintiff, Joseph Kubiak, Administrator Ad Prosequendum of the Estate of his late son, Gregory Kubiak ("Decedent").  Plaintiff Joseph Kubiak brings this action on behalf of his late son's estate.

8.     Defendant Cumberland County is a county of the State of New Jersey and owns, operates, manages, directs and controls the Cumberland County Correctional Facility through its Department of Corrections.  The Cumberland County Correctional Facility is located at 54 West Broad Street, Bridgeton, New Jersey 08302 (referred at times herein as the "Cumberland County Jail").

9.     Defendant CFG Health Systems, LLC, ("CFG"), with corporate offices located at 765 East Route 40, Building A-101, Marlton, New Jersey 08053, contractually engaged with Cumberland County and the Cumberland County Department of Corrections to provide health care services for inmates at the Cumberland County Jail.

10.     Defendant Richard Smith ("Smith") was at all times material hereto, the Director or Warden of the Cumberland County Jail. Smith is and continues to serve as the Warden of the Cumberland County Jail and is sued in his official capacity.  Defendant Smith is responsible for all employees at the Cumberland County Jail.

11.     Defendant Richard Cotto ("Cotto") was at all times material hereto, a Corrections Officer employed by the Cumberland County, supervised by Defendant Smith as a Corrections Officer at the Cumberland County Jail.

12.     Defendant Gabriella Frisbey ("Frisbey") was at all times material hereto, a registered nurse employed by Defendant CFG, providing medical and/or mental healthcare services to inmates incarcerated at the Cumberland County Jail, and acting under the supervision of CFG and/or the Cumberland County Department of Corrections. Defendant CFG and Defendant Frisbey are sometimes herein referred to as "CFG Defendants."

## SUBSTANTIVE ALLEGATIONS

13.     On November 15, 2018, Decedent was arrested for allegedly violating conditions of an intensive supervision program.

14.     Shortly after his arrest, Decedent was incarcerated at the Cumberland County Jail.

15.     This was not Decedent's first time being incarcerated. In fact, Decedent had been incarcerated at Cumberland County Jail previously.

16.     During Decedent's prior incarceration, in 2017, Decedent reported depression and was subsequently treated for his anxiety with medication at the Cumberland County Jail.

17.     Upon information and belief, CFG employees has documented Decedent's receipt of prior medical treatment at the Cumberland County Jail for mental health issues.

18.     When Decedent arrived at the Cumberland County Jail, on November 15, 2018, Decedent completed an intake interview where he disclosed that he was under the influence of drugs or alcohol and that the Decedent suffered from a serious medical condition for which he was medicated.

19.     On November 15, 2018, Frisbey, a registered nurse, reviewed notes that the Decedent was under the influence of drugs or alcohol and that the Decedent suffered from a serious medical condition for which he was medicated.

4

20.     Frisbey either failed to check Decedent's prior medical history at the Cumberland County Jail or disregarded Decedent's prior medical history.

21.     In November 2018, Decedent presented a risk for drug and alcohol withdrawal and should have been placed in a unit that required close monitoring for medical attention.

22.     Despite Decedent's visible intoxication and his use of medications for his serious medical condition, Frisbey medically accepted and cleared Decedent for incarceration.

23.     Frisbey cleared Decedent to be placed in general population and did not assign Decedent to any unit within the Cumberland County Jail where he would be monitored despite Decedent's impaired mental health status.

24.     In fact, without regard to Decedent's past treatment for depression and anxiety at the Cumberland County Jail, and his visible intoxication at intake, Decedent was assigned to H-block.

25.     H-block was not a unit designated for extra monitoring for those inmates who should have been monitored more closely upon intake as they present a risk for self-harm or endangering others.  As such, Decedent was not under any other monitoring than that of the general population at Cumberland County.

26.     At approximately, 11:17 am, on November 16, 2018, in the H-block of the Cumberland County Jail, Corrections Officer Darrin Harris overhead the visibly upset Decedent loudly speaking on the phone.  Corrections Officer Harris later learned that Decedent's girlfriend left him for another man.  No inquiry or check was subsequently done as to the Decedent's mental health status.

27.     Defendant Cotto was assigned to H-block where he was responsible for performing routine checks of inmates under his supervision.

28.    Specifically, on November 16, 2018, Defendant Cotto was assigned to an overnight shift, which had him supervising H-block into the hours of November 17, 2018.

29.    Upon information and belief, there are camera systems inside H-block, which provide various views of the cellblock. These camera systems are meant to record inmates and officers, alike.

30.    Upon information and belief, there is an "officer's desk" for corrections officers to use throughout their shift where the logbooks are kept.

31.    Upon information and belief, corrections officers are supposed to write down their inspection of the blocks noting times and status of inmates and portions of the block in these logbooks.  This is standard record keeping procedure.

32.    Upon information and belief, it was and is common practice at the Cumberland County Jail for corrections officers who were assigned overnight shifts to note inspections of the block that never actually occurred as officers slept or were otherwise distracted from their official duties.

33.    Upon information and belief, at some point during Defendant Cotto's shift at Cumberland County Jail, Defendant Cotto hung a trash bag in a manner obscuring a camera's view inside H-block.

34.    Upon information and belief, the obstruction of view of the camera with the trash bag was a common tactic so that Cotto – and others – could avoid performing their responsibilities and monitor inmates.

35.    Upon information and belief, Defendant Cotto had utilized this tactic and others to hide his regular deviation from his official duties in the past.

36.     Upon information and belief, on November 17, 2018, between 6:14 and 6:17 am, Decedent attempted to commit suicide by hanging himself.

37.     On November 17, 2018, at 6:15 am, Defendant Cotto notated in the H-block logbook that there were no incidents to report on the block.

38.     On November 17, 2018, at 6:38 am, Corrections Officer Bryan Fernandez called a "Code 88" in H-Block.

39.     "Code 88" is a code used to alert officers that there has been a suicide attempt made in the Cumberland County Jail.

40.     The November 17, 2018 call for "Code 88" was a result of the Decedent attempting suicide by trying to hang himself.

41.     Immediately after the "Code 88" was called, a directive was given for 911 to be called seeking an outside emergency response.

42.     In response to the call of "Code 88", multiple corrections officers began to perform chest compressions on the Decedent.  Further, two nurses arrived and began to place an automated external defibrillator on Decedent's chest.

43.     On November 17, 2018, at 6:40 am, Defendant Cotto was witnessed writing in the H-block logbook while sitting at the officer's desk.

44.     On November 17, 2018, at 6:47 am, Bridgeton EMS arrived at the Cumberland County Jail and they were escorted to H-block.

45.     On November 17, 2018, at 6:50 am, Sergeant Watson cleared the "Code 88" call and at 7:00 am, the emergency response team, including the Bridgeton EMS had left Cumberland County Jail with Decedent in their custody and took Decedent to Inspira Hospital Vineland.

46.     On November 20, 2018, Decedent died as a result of the injuries sustained when he hung himself three days prior.

**Decedent Kubiak's Serious Medical Need**

47.     At all relevant times, while incarcerated in the Cumberland County Jail, the Eighth Amendment to the United States Constitution protected the Decedent.

48.     The Eighth Amendment requires that prisoners receive medical and psychological healthcare during their incarceration.

49.     The State of New Jersey, on a county by county basis, contracts medical services for its jail and prison facilities.

50.     Defendant Cumberland County contracted with Defendant CFG to provide medical and psychological services to the Cumberland County Jail.

51.      All CFG employees, corrections officers, including the Warden, are prison officials required to provide health care to prisoners in line with constitutional standards, especially when prisoners experience a "serious" medical need.

52.     A medical need is "serious" if a physician diagnosed the condition as requiring treatment or is so obvious that a layperson would easily recognize the necessity for a doctor's attention.

53.     Mental illnesses constitute "serious medical needs" when they require treatment, or are so obvious, a layperson would recognize the necessity for a doctor's treatment.  A "severe" mental health condition is one that has caused significant disruption in a prisoner's everyday life and prevents a prisoner from functioning in the general population without disturbing or endangering others or himself.

8

54.     A mental health care system that meets the serious needs of prisoners must include a systematic program for screening and evaluating prisoners in order to identify those who require mental health treatment.

55.     According to the National Commission on Correctional Health Care ("NCCHC"), upon arrival at prison or a jail, an inmate, or pretrial detainee must be given a psychiatric screening.

56.     Screening procedures designed to comply with NCCHC standards alert medical staff of all serious mental illnesses and protect the inmate from hurting himself or others. Further, the NCCHC standards require an inmate's level of mental instability or illness be documented and reported to the jail supervisor and an inmate assigned a suicide watch level.[1]

57.     During an appropriate screening, an inmate's past and present mental health problems must be documented and thoroughly assessed.  The inmate should be asked questions that probe at potential mental illness indicators.

58.     Upon information and belief, Decedent was not asked questions that probed sufficiently to address mental illness indicators or the Decedent's responses were disregarded completely.

59.     Despite CFG Defendants previously treating the Decedent the same facility for anxiety and depression, but upon his intake for his November 2018 incarceration, he was not flagged for monitoring due to his mental illness.

---

[1] NCCHC standards make clear that physical observation and communication with the inmate are essential to the assessment because the inmate may not always want to be truthful or feel safe discussing his mental illness.

60.     NCCHC standards illustrate that documentation (of current or past) alcohol or drug addiction is necessary for prison or jail staff to address and treat because of the dangerous side effects of withdrawal, including suicidal thoughts or tendencies.

61.     Effective treatment requires the participation of trained mental health professionals, who must be employed to identify and treat, in an individualized manner, prisoners suffering from serious mental illness or substance abuse or dependency.

62.     Upon information and belief, the screening process at the Cumberland County Jail is not individualized and therefore, inmates' mental illnesses and/or substance dependency issues are not being properly identified, nor treated.

63.     Upon information and belief, instead of establishing an adequate screening and evaluation program, CFG's policy requires staff members to complete a one (1) or half (½) page yes or no mental health checklist.[2]

64.     Upon information and belief, after an inmate's disclosure of prior mental illness or instability, CFG employees, or other prison officials, routinely fail to conduct follow-up examinations on an individual level.

65.     Upon information and belief, Defendants continually ignore the information provided at intake resulting in a failure to appropriately screen and provide inmates medication and other treatment vital to their mental health.

---

[2] The CFG intake checklist only includes surface level mental health questions. For instance, the checklist includes questions such as "does the person appear to be under the influence of drugs or alcohol," or "does the person appear despondent," or "does the person appear to exhibit bizarre behavior? Under CFG's policy, action is not required unless an inmate answers "yes" to at least eight of the more significant questions posed (*i.e.*, does the inmate "expresses thoughts of killing self," or "[have] a suicide plan," or have "previous suicide attempts") on the one page checklist. Therefore, under CFG's policy, at screening, an inmate could answer "no" to all but the three suicide topic questions, and thereafter not receive any mental health treatment, medication, or therapy.

66.    Upon information and belief, upon arriving at the Cumberland County jail, Decedent's current state of intoxication – either from alcohol or drugs – was noted but not flagged, and Decedent's prior mental health treatment was ignored.

67.    Upon information and belief, Defendants inadequately screened Decedent for mental health issues.

68.    Upon information and belief, Defendants failed to conduct any follow-up examinations of the Decedent after he completed his initial intake interview at the Cumberland County Jail.

69.    Upon information and belief, Decedent did not receive necessary and appropriate medications or treatment and as a result became suicidal.

70.    After Decedent became suicidal, Defendants failed to properly treat and monitor Decedent.  As a result, Decedent ultimately succeeded in his suicide attempt.

**Cumberland County Jail Operated With Deliberate Indifference to Decedent Serious Medical Needs**

71.    The NCCHC standards, based on federal regulations, for running an efficient mental health services program are tailored for the corrections field.

72.    CFG holds itself out as a correctional health care service provider with considerable expertise in providing exceptional medical and behavioral services to county correctional facilities located throughout the State of New Jersey, including the Cumberland County Jail.

73.    CFG is aware of the standards and the accreditation programs offered by the NCCHC.

74.    Inmates who are incorrectly diagnosed or not diagnosed at all with a mental illness and who are confined without adequate mental health treatment, medication, and/or

therapy predictably face devastating results, including aggressive and violent behavior, deepening depression, and successful and unsuccessful attempts at suicide or the taking the lives of others.

75.     Defendants have long been aware of the systematic failure of the mental health policies in place within the Cumberland County Jail.

76.     Over the last several years, the suicide rate of inmates in State of New Jersey county jails is and has been drastically increasing.[3] In 2015, Hudson County Jail stood out as a drastic example of the increase of suicides among inmates with six suicides in a year.[4] From the period of June 2017 through March 2018, four more suicides took place within the Hudson County Jail.  At the time of these suicides, CFG held the contract to provide medical services to the Hudson County Jail.

77.     Moreover, Decedent's death was the seventh suicide in three years at the Cumberland County Jail and the facility was subsequently investigated by the United States Department of Justice.

78.     Cumberland County and/or CFG Defendants knew, or should have known, that Decedent, and inmates like the Decedent, who had a history of substance abuse were more likely to need mental health care.

---

[3] A study of inmate deaths by the U.S. Department of Justice's Bureau of Justice Statistics, published in 2015, found 23 deaths in New Jersey jails in 2013, the most recent year it surveyed. It did not provide a breakdown by manner of death for 2013, but tallied 40 suicides among the total of 763 deaths of state and federal inmates in New Jersey between 2001 and 2013.

[4] Robert Lewis, 35, suffered from depression and addiction, was found hanging on October 30, 2015, just five days after he was incarcerated. Alissa Allen, 24, also suffered from substance dependency and hung herself in on March 22, 2015, only two days after she was arrested. There have been numerous other cases throughout the State of New Jersey at CFG operated facilities.

79.     Cumberland County and/or CFG Defendants knew, or should have known, that Decedent, and inmates like the Decedent, who had a history of substance abuse, presented a substantial risk for suicidal tendencies.

80.     Defendant CFG operated, and continue to operate the Cumberland County Jail, outside of its compliance with national standards and without regard for the staggering number of suicides and grievances lodged about the treatment of mentally ill inmates, like Decedent.

**<u>Defendant Cumberland County and Defendant Smith are Complicit in Enabling the Unconstitutional Deliberate Indifference to Prisoners' Serious Medical Needs to Continue.</u>**

81.     Defendant Cumberland County and Defendant Smith are complicit in enabling the constitutional violations to persist at Cumberland County Jail.

82.     Defendant Cumberland County is responsible for the conduct of its governmental subdivisions, which include the Department of Corrections and the operation of the Cumberland County Jail.

83.     Defendant Cumberland County has allowed CFG and prison officials to operate despite the CFG's failure to institute and follow appropriate mental health screening procedures, thereby adopting and *defacto* approving the policies and practices used in the Cumberland County Jail.

84.     Defendant Cumberland County is aware that these ineffective policies are creating unconstitutional environments where inmates, like Decedent, are not receiving necessary care for serious medical needs. Therefore, Defendant Cumberland County is complicit in the deliberate indifference to the serious medical needs of inmates.

85.     Defendant Smith is responsible for overseeing the operation and management of the Cumberland County Jail.

86.     Defendant Smith allowed and continues to allow the Cumberland County Jail to operate despite its deliberate indifference to the serious medical needs of inmates.

87.     Defendant Cotto was indicted by the State of New Jersey for his role in Decedent's death and for failing to perform routine checks on Decedent and then for falsifying records in the logbook to indicate that he had performed those checks.[5]

88.     Defendant Cotto's false entry in the logbook, or false alteration of a preexisting entry, created a substantial risk of death to another person – specifically, the Decedent.

89.     On December 3 2018, Plaintiffs timely filed his Notice of Claim pursuant to N.J.S.A § 59:8-4.  The Notice of Claim was ignored Defendants. Accordingly, Plaintiffs have filed suit.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### FEDERAL CONSTITUTIONAL VIOLATIONS BY
### DEFENDANTS CUMBERLAND COUNTY AND DEFENDANT SMITH – FAILURE
### TO TRAIN

90.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

91.     42 U.S.C. §1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

92.     Plaintiffs in this action are citizens of the United States.

---

[5] Specifically, Defendant Cotto was indicted on a second-degree charge of official misconduct and third-degree charges of endangering another person and tampering with public records.

93.     Defendants to this claim are persons for purposes of 42 U.S.C. §1983.

94.     At all relevant times, the Defendants were acting under the color of state law.

95.     At the time of the complained of events, Decedent Kubiak had the clearly established constitutional right to be free from cruel and unusual punishment.

96.     The Eighth Amendment to the United States Constitution states, "[E]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

97.     The Eighth Amendment to the United States Constitution requires that state actors take responsible measures to guarantee the safety and well-being of inmates in their custody.

98.     Defendant, Cumberland County, by and through Defendant Smith and other policymakers, developed policies, procedures and/or customs, which caused the deprivation of Decedent Kubiak's constitutional rights.

99.     Said policies were inherently deficient, or in fact appropriate as formulated, but were routinely ignored and violated by Defendant Cotto with such frequency and reckless abandon that he did not fear discipline should he get caught.

100.    Defendants Cumberland County, by and through Defendant Smith and other policymakers, negligently, recklessly, and/or intentionally:

    a.  failed to properly train and supervise Defendant Cotto with regard to adequately assessing, monitoring and treating inmates with suicidal tendencies and other psychological problems;

    b.  failed to properly train and supervise Defendant Cotto other jail staff to maintain a safe and suitable environment, and to keep inmates safe from injury, harm or death;

    c.   maintained policies, procedures and/or customs that were deliberately indifferent to the constitutional rights of inmates to be adequately monitored; and to be kept safe from injury, harm or death;

    d.   failed to enforce the contractual obligations of CFG to monitor and treat inmates with suicidal tendencies and other mental health problems;

    e.   with full knowledge, allowed institutional policies and procedures regarding intake, medical screening, custodial watch and medical treatment to be ignored and violated with reckless abandon; and

    f.   failed to provide adequate and needed mental health care for inmates at the Cumberland County Correctional Facility.

101.    The actions and/or failures to act by Defendant Cumberland County and Defendant Smith, as illustrated above, amounted to a deliberate indifference of Decedent Kubiak's constitutional rights and proximately caused his death.

102.    The violation of Mr. Kubiak's rights under the United States Constitution was the proximate cause of damages to Plaintiffs, thereby entitling Plaintiffs to compensatory damages from Defendants Cumberland County and Defendant Smith in an amount in excess of $1,000,000.00.

<u>**SECOND CLAIM FOR RELIEF**</u>
**42 U.S.C. § 1983**
**FEDERAL CONSTITUTIONAL VIOLATIONS BY**
**DEFENDANT COTTO AND DEFENDANT FRISBEY**

103.    The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

104.    42 U.S.C. §1983 provides that:

    Every person, who under color of any statute, ordinance, regulation,

16

custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

105.    Plaintiffs in this action are citizens of the United States.

106.    Defendants to this claim are persons for purposes of 42 U.S.C. §1983.

107.    At all relevant times, the Defendants were acting under the color of state law.

108.    At the time of the complained of events, Decedent Kubiak had the clearly established constitutional right to be free from cruel and unusual punishment.

109.    The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

110.    The Eighth Amendment to the United States Constitution requires that state actors take responsible measures to guarantee the safety and well-being of inmates in their custody.

111.    The Due Process Clause of the Fourteenth Amendment affords pretrial detainees the same rights as those afforded convicted prisoners. Defendants, acting under the color of state law, have subjected Decedent, a pretrial detainee, to inadequate mental health care causing substantial risk of serious physical and psychological harm, and as such, constitute unlawful punishment in violation of the Fourteenth Amendment.

112.    As alleged herein and above, Defendants' failure to utilize an appropriate mental illness and substance abuse screening and treatment plan in Cumberland County Jail constitutes a violation of Decedent's Eighth Amendment rights because Defendants denied and delayed treatment with deliberate indifference to Decedent's serious medical needs.

113.    At all times relevant, Defendants acted under color of law to delay and deny Decedent proper medical care to treat his mental illness and/or substance abuse issue.

17

114.   Defendants knew or should have known that Decedent had mental illness and/or substance abuse or dependency. As a result, Defendants knew or should have known that denying and delaying a treatment was a substantial, if not excessive, risk to Decedent's health. Defendants consciously disregarded this risk in violation of Decedent's Eighth Amendment rights.

115.   Defendants' failure to provide treatment for Decedent's mental illness and/or substance abuse or dependency was not predicated on legitimate differences in medical opinion, but on deliberate indifference and conscious disregard for Decedent's serious medical needs, which led to Decedent's death.

116.   The actions of Defendants in their individual capacities were intentional, malicious, willful, wanton, and/or in reckless disregard of Decedent's federally protected rights, therefore entitle Plaintiffs to an award of punitive damages.

117.   Plaintiffs seek compensatory and punitive damages in an amount greater than $1,000,000.00.

118.   Plaintiffs are entitled to recover reasonable attorneys' fees and the costs and expenses of this action.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 –MONELL LIABILITY**
**AGAINST CUMBERLAND COUNTY**

119.   The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

120.   42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

121.    Plaintiffs are citizens of the United States.

122.    Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

123.    At all relevant times, the Defendants to this claim were acting under the color of state law.

124.    Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 where execution of official policy or custom deprives an individual of its rights protected under the Constitution.[6]

125.    Such municipal liability exists where a city fails to properly train, supervise, and discipline its employees amounting in a deliberate indifference to an individual's constitutional rights.[7]

126.    At all relevant times, Defendants Cumberland County and Smith had a duty to properly train, supervise, and discipline their employees and agents.

127.    Defendants Cumberland County and Smith breached that duty, in part, when they:

    a.   failed to properly train and supervise Defendant Cotto with regard to adequately assessing, monitoring inmates, and if needed, treating inmates with suicidal tendencies and other psychological problems;

    b.   failed to properly train and supervise Defendant Cotto or other jail staff to maintain a safe and suitable environment, and to keep inmates safe from injury, harm or death;

---

[6] *See Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694-95 (1978).

[7] *See City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989); *Logan v. Bd. of Educ. of the Sch. Dist. of Pittsburgh*, No. 17-2095, 2018 U.S. App. LEXIS 21714, at *10 (3d Cir. Aug. 6, 2018).

c. maintained policies, procedures and/or customs that were deliberately indifferent to the constitutional rights of inmates to be adequately screened for suicidal tendencies or other mental health problems; to be adequately monitored; and to be kept safe from injury, harm or death;

d. failed to enforce the contractual obligations of CFG to monitor and treat inmates with suicidal tendencies and other mental health problems;

e. with full knowledge, allowed institutional policies and procedures regarding intake, medical screening, custodial watch and medical treatment to be ignored and violated with reckless abandon; and

f. failed to provide adequate and needed mental health care for inmates at the Cumberland County Correctional Facility.

128. The policy, pattern of practice, or custom of condoned misconduct is tacitly or overtly sanctioned, as evidenced by the conduct of Defendant Cotto, and Defendants Cumberland County and Smith's failure to train, supervise, investigate, and discipline those involved in this incident, amounting in a deliberate indifference to Decedent's constitutional rights.

129. Defendant Cotto's unconstitutional behavior is carried out pursuant to a policy, pattern of practice, or custom, whether formal or informal, which violates the constitutional rights of inmates situated such as Decedent.

130. Defendants Cumberland County and Smith failed to take remedial actions to end this policy, pattern of practice, or custom within the Cumberland County Jail.

131. The condoning of misconduct, and the failure to end this policy, pattern of practice, or custom was a proximate cause of the injuries suffered by Plaintiffs.

132.    By reason of the aforesaid violation of Decedent's rights, Plaintiffs are entitled to damages under 42 U.S.C. § 1983.

**FOURTH CLAIM FOR RELIEF**
**SUPERVISORY LIABILITY OF DEFENDANT SMITH UNDER 42 U.S.C. § 1983**

133.    The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

134.    At all times relevant hereto, Defendant Smith served as the Warden of Cumberland County Jail.

135.    Plaintiffs are informed, believe and therefore allege that on November 17, 2018, Defendant was aware of, should have been aware of, and/or had accrual knowledge of the pattern and culture of unconstitutional behavior and indifference, including failure to properly screen inmates for suicidal tendencies or other mental health problems, failure to adequately monitor and guard inmates, failure to have inmates properly treated medically and for mental health problems, failure to provide safe, appropriate and needed medication, and failure to protect inmates from injury, harm or death whether self-inflicted or others.

136.    As such, Defendant not only directed, encouraged, tolerated, acquiesced to this behavior, but was deliberately indifferent to the likelihood that his staff, employees and/or corrections officers would fail to properly screen inmates for suicidal tendencies or other problems, fail to adequately monitor inmates, fail to treat inmates medically and fail to protect inmates from injury, harm or death at the Cumberland County Jail.

137.    The deliberate indifference of the Defendant to the need for training and supervision of his staff, employees and/or corrections officers was a proximate cause of the constitutional violations suffered by Decedent.

138.    The violation of Decedent's rights under the United States Constitution was a proximate cause of damages and harm to Plaintiffs, thereby entitling Plaintiffs compensatory damages in the amount exceeding $1,000,000.00.

## FIFTH CLAIM FOR RELIEF
### VIOLATION OF NEW JERSEY CIVIL RIGHTS ACT
### N.J.S.A 10:6-1, et. seq.
### DEFENDANT COTTO AND DEFENDANT FRISBEY

139.    The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

140.    Defendant Cotto was acting under color of law when he failed to monitor, and protect Decedent from injury, harm or death.

141.    Defendants Cumberland County and Smith failed to adequately train or otherwise have and maintain effective policies and training of employees and/or corrections officers of the Cumberland County jail to protect inmates from injury, harm or death.

142.    Defendants Cumberland County and Smith were deliberately indifferent to the likelihood that the Cumberland County Jail's staff, employees and/or corrections officers, including Defendant Cotto, would fail to protect inmates, like Decedent, from injury, harm or death in violation of the law.

## SIXTH CLAIM FOR RELIEF
### WRONGFUL DEATH
### AGAINST ALL DEFENDANTS

143.    The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

144.    Defendants owed a duty of reasonable care to Decedent and to others, at the Cumberland County Jail, to properly screen inmates for suicidal tendencies or other mental

22

health problems, to properly and adequately monitor inmates, to treat inmates medically when indicated and to protect inmates from injury, harm or death.

145.    Defendants failed to use the recommended and accepted standard of care, and/or violated established policies and procedures with reckless abandon, subjecting the Decedent to a violation of his constitutional right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendment of the United States Constitution.

146.    The actions and/or failures to act by the Defendants constitute a pattern of conduct and culture of disregard that amounted to deliberate indifference of Decedent's rights and proximately caused his death.

147.    As a direct and proximate result of Defendants' negligence, gross negligence, recklessness and breach of other duties owed to the Decedent, Plaintiff have sustained pecuniary loss, economic damages and losses, mental anguish, emotional pain and suffering, pain and suffering, loss of society, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

## SEVENTH CLAIM FOR RELIEF
### NEGLIGENCE
### AGAINST ALL DEFENDANTS

148.    The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

149.    Defendants owed a duty of reasonable care to Decedent and others at the Cumberland County Jail, to properly screen inmates for suicidal tendencies or other mental health problems, to properly and adequately monitor inmates, to treat inmates medically when indicated and to treat inmates medically when indicated.

150.    Defendants were negligent in their care and treatment of Decedent in that they failed to care for and treat him in accordance with the standard of care and skill required of and ordinarily exercised by average, qualified healthcare providers engaged in medical practice in a correctional setting.

151.    The actions and/or failures to act by Defendants amounted to a breach of said duty of care to Decedent.

152.    As a direct and proximate result of Defendants' negligence, Decedent hung himself and died.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief: compensatory damages, punitive damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York
          July 27, 2020

                                        Respectfully submitted,

                                        **HACH ROSE SCHIRRIPA & CHEVERIE LLP**

                                        By: */s/ Hillary Nappi*
                                        Frank R. Schirripa
                                        Hillary M. Nappi
                                        112 Madison Avenue, 10th Floor
                                        New York, New York 10016
                                        Telephone: (212) 213-8311
                                        Facsimile: (212) 779-0028
                                        fschirripa@hrsclaw.com
                                        hnappi@hrsclaw.com

                                        Conrad J. Benedetto, Esq.

THE LAW OFFICE OF CONRAD J. BENEDETTO
112 Haddontowne Court, Suite 203
Cherry Hill, New Jersey 08034
Tel.: (215) 389-1900
cjbenedetto@benedettolaw.com

*Attorneys for Plaintiffs*