```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
_____
                             :
THE ESTATE OF GREGORY KUBIAK,:
et al.,                      :
                             :
          Plaintiffs,        :    Civ. No. 20-9478 (NLH) (KMW)
                             :
     v.                      :    OPINION
                             :
                             :
CFG HEALTH SERVICES, LLC,    :
et al.,                      :
                             :
          Defendants.        :
                             :
_____ :
```

APPEARANCES:

Stephen D. Holtzman, Esq.
Jeffrey S. McClain, Esq.
Holtzman McClain & Londar, PC
524 Maple Avenue, Suite 200
Linwood, NJ 08221

   Counsel for Defendants CFG Health Systems, LLC and Gabrielle Frisbey


Conrad J. Benedetto, Esq.
Law Offices of Conrad J. Benedetto
1615 South Broad Street
Philadelphia, PA 19148

Frank R. Schirripa, Esq.
Hillary M. Nappi, Esq.
Hach Rose Schirripa & Cheverie, LLP
112 Madison Avenue, 10th Floor
New York, New York 10016


   Counsel for Plaintiffs Estate of Gregory Kubiak and Joseph Kubiak, As Administrator Ad Prosequendum of The Estate of Gregory Kubiak

HILLMAN, District Judge

This matter arises out of the unfortunate suicide of Gregory Kubiak while he was detained at the Cumberland County Jail. His father and administrator of his estate, Joseph Kubiak, filed this lawsuit against defendants Cumberland County, former Cumberland County Jail Warden Richard Smith, CFG Health Systems ("CFG"), Officer Richard Cotto, and Nurse Gabriella Frisbey. ECF No. 1.

CFG and Nurse Frisbey move for partial summary judgment on Plaintiff's wrongful death and negligence claims. ECF No. 17. They argue Plaintiff failed to obtain an affidavit of merit ("AOM") as required by New Jersey state law. Id. Plaintiff opposes the motion. ECF No. 19. For the reasons stated below, the Court will grant the motion in part.

I.   BACKGROUND

Gregory Kubiak was arrested and taken to the Cumberland County Jail on November 15, 2018. Complaint ¶ 13. At that time, Gabrielle Frisbey worked at the jail as a registered nurse employed by CFG, the jail's medical care provider. Defendants' Statement of Material Facts ("DSOMF"), ECF No. 17-2, ¶¶ 2-3. On or about November 17, 2018, Mr. Kubiak hanged himself in his cell. Complaint ¶ 36. He passed away from his injuries three days later. Id. ¶ 46.

Plaintiffs filed this complaint on July 27, 2020.  ECF No. 1.  Defendants CFG and Nurse Frisbey filed their answer to the complaint on September 10, 2020.  ECF No. 4.  On January 20, 2021, CFG and Nurse Frisbey filed the instant motion for partial summary judgment on Counts Six and Seven of the Complaint, alleging wrongful death and negligence, based on Plaintiff's alleged failure to comply with New Jersey's affidavit of merit statute, N.J.S.A. §§ 2A:53A-27, -29.  ECF No. 17.  Plaintiffs argue they were not required to file an AOM for their claims, or, in the alternative, that the common knowledge exception applies.  ECF No. 19.

II. STANDARD OF REVIEW

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 250.  The Court should view the facts in the light most favorable to the non-moving party

and make all reasonable inferences in that party's favor.  Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact.  See Celotex Corp. v. Carrett, 477 U.S. 317, 323 (1986).  Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson, 477 U.S. at 257. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

III. DISCUSSION

A.   Application of Statute

4

Plaintiffs argue that New Jersey's affidavit of merit statute does not apply to their wrongful death and negligence claims. The statute requires, in relevant part, that a plaintiff bringing a professional malpractice or negligence claim

> provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices....

N.J.S.A. § 2A:53A-27. "The submission of an appropriate affidavit of merit is considered an element of the claim. Failure to submit an appropriate affidavit ordinarily requires dismissal of the complaint with prejudice." Meehan v. Antonellis, 141 A.3d 1162, 1169 (N.J. 2016) (internal citations omitted). In determining whether the affidavit of merit statute applies to a particular claim, courts must consider three elements:

> (1) whether the action is for "damages for personal injuries, wrongful death or property damage" (nature of injury); (2) whether the action is for "malpractice or negligence" (cause of action); and (3) whether the "care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint [] fell outside acceptable professional or occupational standards or treatment practices" (standard of care).

5

Couri v. Gardner, 801 A.2d 1134, 1137-38, (N.J. 2002) (quoting N.J.S.A. 2A:53A-27) (alteration in original).  Here, the parties dispute the third element.

The third element requires the Court to "determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession.  If such proof is required, an affidavit of merit is required for that claim, unless some exception applies."  Id. 1141.

> [B]y asking whether a claim's underlying factual allegations require proof of a deviation from a professional standard of care, courts can assure that claims against licensed professionals acting in a professional capacity that require proof of ordinary negligence but not of a deviation from professional standards are not encompassed by the statute.  For example, while the former standard would include allegations that a psychiatrist failed to diagnose a patient properly or provide proper treatment, it would exclude allegations that a psychiatrist negligently tripped a patient when the patient entered the doctor's office, which clearly would be outside the scope of the statute.

Id.

Plaintiffs allege Gregory Kubiak was under the influence of drugs or alcohol and suffering "from a serious medical condition for which he was medicated" when he was booked into Cumberland County Jail on November 15, 2018.  Complaint ¶ 18.  They further allege Nurse Frisbey "reviewed notes that the Decedent was under the influence of drugs or alcohol and that the Decedent suffered

6

from a serious medical condition for which he was medicated." Id. ¶ 19. "Frisbey either failed to check Decedent's prior medical history at the Cumberland County Jail or disregarded Decedent's prior medical history." Id. ¶ 20. According to Plaintiffs, Gregory Kubiak had been detained at the jail on a prior occasion and "reported depression and was subsequently treated for his anxiety with medication at the Cumberland County Jail" and "CFG employees [] documented Decedent's receipt of prior medical treatment at the Cumberland County Jail for mental health issues." Id. ¶¶ 16-17.

"New Jersey case law makes clear that the language of the complaint controls in affidavit of merit determinations . . . ." Syndicate 1245 at Lloyd's v. Walnut Advisory Corp., 721 F. Supp. 2d 307, 322 (D.N.J. 2010). Plaintiffs specifically invoke the professional standard of care in a correctional setting by citing to the National Commission on Correctional Health Care's ("NCCHC") requirements that "upon arrival at a prison or a jail, an inmate, or pretrial detainee must be given a psychiatric screening." Complaint ¶ 54. "During an appropriate screening, an inmate's past and present mental health problems must be documented and thoroughly assessed. The inmate should be asked questions that probe at potential mental illness indicators." Id. ¶ 57. "Upon information and belief, Decedent was not asked questions that probed sufficiently to address mental illness

7

indicators or the Decedent's responses were disregarded completely." Id. ¶ 58. "Upon information and belief, instead of establishing an adequate screening and evaluation program, CFG's policy requires staff members to complete a one (1) or half (½) page yes or no mental health checklist." Id. ¶ 63. The plain language of the Sixth and Seventh Claims also reference the professional standard of care:

> Defendants failed to use the recommended and accepted standard of care, and/or violated established policies and procedures with reckless abandon, subjecting the Decedent to a violation of his constitutional right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendment of the United States Constitution.

Id. ¶ 145 (Sixth Claim).

> Defendants were negligent in their care and treatment of Decedent in that they failed to care for and treat him in accordance with the standard of care and skill required of and ordinarily exercised by average, qualified healthcare providers engaged in medical practice in a correctional setting.

Id. ¶ 150 (Seventh Claim). This is "terminology typically reserved for professional negligence actions." Syndicate 1245 at Lloyd's, 721 F. Supp. 2d at 316.

Plaintiffs' allegations are not the same as ordinary negligence, like a "psychiatrist negligently tripp[ing] a patient when the patient entered the doctor's office . . . ." Couri v. Gardner, 801 A.2d 1134, 1141 (N.J. 2002). A factfinder must consider and determine whether the average professional in

CFG and Nurse Frisbey's position would have acted in such a manner. Therefore, Plaintiffs must submit an affidavit of merit on their claims unless some exception applies.

B.   Common Knowledge Exception

Plaintiffs assert that the common knowledge exception applies to their claims. "'[T]he doctrine of common knowledge permits exception to the general rule; when it is applied, expert testimony is not needed to establish the applicable standard of care.' This exception applies only when the defendant's negligence is obvious 'to anyone of average intelligence and ordinary experience.'" Bornstein v. Monmouth Cty. Sheriff's Office, 658 F. App'x 663, 669 (3d Cir. 2016) (quoting Estate of Chin v. St. Barnabas Med. Ctr., 734 A.2d 778, 785-86 (N.J. 1999)). The New Jersey Supreme Court has cautioned that courts should narrowly construe the exception. Hubbard ex rel. Hubbard v. Reed, 774 A.2d 495, 501 (N.J. 2001). By way of example, courts have applied the exception to cases in which the wrong tooth was extracted, Hubbard, 774 A.2d at 500-01, or in which a pharmacist filled a prescription with the wrong drug, Bender v. Walgreen E. Co., 945 A.2d 120, 123 (N.J. Sup. Ct. App. Div. 2008). See also Est. of Allen v. Cumberland County, 262 F. Supp. 3d 112, 116 (D.N.J. 2017) (citing cases).

Plaintiffs allege that Nurse Frisbey reviewed notes indicating Gregory Kubiak was being medicated for an

9

unidentified medical condition and was under the influence of drugs or alcohol at the time of his booking. They further allege that Nurse Frisbey did not review Gregory Kubiak's prior medical history at the Cumberland County Jail or disregarded it entirely despite knowing he had a medical condition and was under the influence.

Sadly, this is not the first time this District has been presented with facts like these. Not too long ago, the Honorable Jerome B. Simandle addressed another case that had been filed by the estate of a former Cumberland County Jail detainee who completed suicide. Est. of Allen, 262 F. Supp. 3d 112. There, as here, defendants moved for summary judgment of the negligence claims based on the lack of an affidavit of merit. Judge Simandle concluded that the case law did "does not support the contention that failure to evaluate properly Ms. Allen's psychiatric or psychological state upon her admission to Cumberland County Jail . . . is similarly analogous so as to fall under the common knowledge exception." Id. at 117.

> [W]ithout an elucidation of what made [Nurse] Garcia's evaluation improper, and without clarity as to how that alleged breach of Garcia's duty led to the harm complained of, a jury of laypersons would not be able, "using ordinary understanding and experience, to determine [Garcia's] negligence without the benefit of specialized knowledge or experts." An expert, of the type specified by the AOM Statute, is precisely what lay finders of fact would need: to describe the standard of nursing care applicable to the evaluation of Ms. Allen under these circumstances, and that there is a

10

> reasonable probability that Garcia breached that standard.

Id. at 117-18 (quoting Estate of Chin v. St. Barnabas Med. Ctr., 734 A.2d 778, 786 (N.J. 1999))(final alteration in original).

This Court is persuaded that Judge Simandle's reasoning applies equally well in this matter. Plaintiffs specifically allege that the evaluation process failed to comply with national standards in correctional medicine. Ordinary understanding and experience are not enough to assist a factfinder in determining whether a mental health screening in a correctional setting was conducted "properly"; expert testimony is needed to establish the applicable standard of care. Therefore, an affidavit of merit was required within 120 days of CFG's and Nurse Frisbey's answer.

That being said, Judge Simandle specifically noted a situation in which an affidavit of merit likely would not be required:

> In this case, the sole basis for the allegations of professional negligence against [Nurse] Garcia appears to be that she failed to evaluate Ms. Allen "properly" with respect to her mental health during Ms. Allen's intake into Cumberland County Jail, and that Ms. Allen (presumably) hanged herself between one and two days later. This is not the case where Garcia failed to evaluate Ms. Allen at all, or Garcia ignored mention of or reference to suicidal thoughts or ideation, or evaluated only Ms. Allen's physical status and not her mental health or well-being. Such a claim could, perhaps, fall under the common knowledge exception.

11

Est. of Allen, 262 F. Supp. 3d at 117. Judge Simandle later applied this hypothetical exception to another jail suicide case out of Cumberland County:

> This Court recently examined the common knowledge exception in light of an analogous fact pattern (the alleged failure to screen an inmate "properly" for suicidal ideation and risk of suicide) in Estate of Allen v. Cumberland County, 262 F. Supp. 3d 112 (D.N.J. 2017).
>
> . . . .
>
> As in Estate of Allen, the basis for the allegations of professional negligence against the treating medical personnel appears to be that they failed to evaluate the decedent properly with respect to his mental health during his intake into Cumberland County Jail, and that he (presumably) hanged himself a short time later.
>
> The Court then ruled that an AOM was necessary because without an elucidation of what made the nurse's evaluation improper, and without clarity as to how that alleged breach of her duty led to the harm complained of, a jury of laypersons would not be able, using ordinary understanding and experience, to determine the nurse's negligence without the benefit of specialized knowledge or experts.
>
> However, the Court carefully delineated and excluded the possibility that the complaint in Estate of Allen alleged that the nurse failed to evaluate the decedent at all, or ... ignored mention of or reference to suicidal thoughts or ideation, or evaluated only the decedent's physical status and not her mental health or well-being, and noted that such a claim could, perhaps, fall under the common knowledge exception. The same distinction will apply here between claims of negligence premised on a healthcare professional's incomplete, inadequate or erroneous mental status examination on the one hand, and failure to make any observations of mental well-being (or perhaps a disregard of clear mention of suicidality) on the other.
>
> Accordingly, and in keeping with the Court's determination in Estate of Allen, the Court will grant

> CFG's motion to the extent that Plaintiff's claims of negligence against CFG are premised upon the failure of CFG's agents or employees to "properly" evaluate or monitor Mr. Lewis, and deny CFG's motion to the extent that Plaintiff's claims of negligence are premised upon a different theory of liability as described above.

Est. of Lewis v. Cumberland Cty., No. 16-3503, 2018 WL 1317853, at *6-7 (D.N.J. Mar. 14, 2018) (cleaned up).

Plaintiffs do not only allege that Nurse Frisbey did not conduct a "proper" mental health screening; they allege that she did not review Gregory Kubiak's medical history at all or ignored it entirely after reviewing it. Complaint ¶ 20. If true, the average juror could conclude that was negligent behavior. It does not take an expert for one to know that a medical professional should review and consider a patient's medical history before treatment. The Court is persuaded by Judge Simandle's reasoning in Estate of Allen and Estate of Lewis that this sort of claim would fall within the common knowledge exception. "Further factual development is needed on the issue of fact whether any mental health examination and observations were made by a healthcare professional." Est. of Lewis, No. 16-3503, 2018 WL 1317853, at *7.

To summarize, Plaintiffs are barred by New Jersey law from asserting that CFG and Nurse Frisbey are liable for a deviation from a standard of care in improperly evaluating Gregory Kubiak's suicidality due to failure to supply an AOM within the

13

statutory 120 days.  Plaintiffs' claims are not barred to the extent they assert that CFG and its employees failed to perform any evaluation of Gregory Kubiak's medical history.

IV.  CONCLUSION

For the reasons set forth above, the Court will grant summary judgment in part.  The denial is without prejudice to Defendants' ability to seek summary judgment on the merits.

An appropriate Order follows.


Dated: August 25, 2021              s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.